UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MILLS,

      Plaintiff,

v.

CSM NEWCO LLC, d/b/a Commercial Sanitation Management,

      Defendants.

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
5955 West Main Street
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

---

## COMPLAINT

Plaintiff Michael Mills alleges the following for his complaint against Defendant CSM NEWCO LLC, doing business as Commercial Sanitation Management.

### NATURE OF THE CASE

1.    This is an employment case about age discrimination and a breach of contract.

2.    Plaintiff Michael Mills worked for Defendant as its president. By every objective measure, he performed his job well and quickly turned the company's lagging performance around.

3.    Still, Defendant proceeded to fire Mills and replaced him with a significantly younger (and substantially less qualified) employee.

4.    Defendant also breached the employment agreement it had with Mills by failing to

pay him his base salary for 12 months as severance pay when it ended his employment without "good cause."

5. Defendants' discriminatory conduct violates the Age Discrimination in Employment Act of 1967 and Michigan's Elliott-Larsen Civil Rights Act. Mills suffered damages as a result of Defendant's statutory violations and its breach of contract that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff Michael Mills is an individual person who resides in Kent County, Michigan.

7. Defendant CSM NEWCO is a limited liability company organized under the laws of the State of Michigan. The company maintains its principal place of business in Kent County, Michigan, and does business under the name "Commercial Sanitation Management."

8. The Court has personal jurisdiction over Defendant under Michigan Compiled Laws Sections 600.711 and 600.715. FED. R. CIV. P. 4(k)(1)(A).

9. The Court has original subject matter jurisdiction over the claims asserted in the complaint under the Age Discrimination in Employment Act of 1967 in accordance with Title 28 of the United States Code, Section 1331, because those claims arise under federal law.

10. The Court has supplemental jurisdiction over the state law claims asserted in the complaint under Title 28 of the United States Code, Section 1367, because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy.

11. Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

## GENERAL ALLEGATIONS

12. Defendant operates as a commercial cleaning and facilities management company that provides custodial and janitorial services throughout Michigan.

13. Plaintiff Michael Mills worked for Defendant as its president beginning in September 2019 until August 6, 2021.

14. As a condition of his employment as the president of the company, Defendant prepared a detailed employment agreement for Mills. The agreement was the product of mutual negotiation, and it was a comprehensive document that covered every significant aspect of the employment relationship. (Ex. 1, Employment Agreement)

15. Although the parties neglected to sign the written terms of their employment agreement, they have acted as though the agreement controls and have otherwise followed the precise terms of the agreement. For example, the parties adhered to the exact compensation scheme specified in paragraph 3 of the agreement. (Ex. 1, Employment Agreement ¶ 3)

16. The employment agreement also required Defendant to pay Mills his base salary for 12 months as a severance payment if the company fired Mills without good cause. (Ex. 1, Employment Agreement ¶ 7)

17. Defendant fired Mills on August 6, 2021, and it did so without good cause. Mills had performed his job well and went above and beyond Defendant's performance expectations for him.

18. For instance, when Mills hired in as Defendant's president, the business had been poorly managed, languishing in significant financial distress, and losing customers. Defendant directed Mills to increase revenue, improve customer retention, and, over time, determine an organizational structure and related costs required to provide the business with long-term stability. Mills created and implemented a plan to increase Defendant's revenue and retain its

customer base, and he executed on both of these goals with aplomb.

19. Under Mills' leadership, Defendant's annualized monthly revenue increased by 50 percent. Customer retention increased from the low 70% range to 99.3% for the 12 months before Mills' firing, and Mills provided operating plans and financial models to outline the cost structures required to operate as a stabilized business.

20. Mills regularly communicated operating plans for the company to his superiors and received approval for those plans. Further, Mills never received any discipline or any negative performance evaluations during the entirety of his employment. In fact, he never received any negative feedback at all regarding his job performance and received a $45,000 performance bonus and a significant raise in his base salary in March 2020 (just a few months before he was fired).

21. Despite all this, Defendant fired Mills a few months later for reasons that were a pretext for age discrimination.

22. The pretextual rush to fire Mills began in late July when an "unidentified employee" supposedly raised concerns about how Mills had: (1) been working remotely during the COVID-19 pandemic instead of at Defendant's office; (2) supposedly submitted "excessive" expense reports and charged interest on his expenses when Defendant did not reimburse those expenses for several months; (3) sold two cars to Defendant for use in its operations; and (4) failed to provide financial statements or updates to Defendant's minority owners.

23. Mills fully addressed and explained each of these alleged issues in a meeting with Defendant, including, most significantly, that his boss knew and approved of each of the acts in question:

- Mills explained that he had worked remotely because Defendant's offices were closed during the COVID-19 pandemic. He further explained that he used the offices of a related company for meetings requiring confidentiality

       because Defendant's offices had thin walls and people would listen to private conversations. He informed Defendant that his boss had encouraged and approved of Mills working at the related company's offices.

- Mills also explained that he sought approval from his boss before incurring expenses and that his boss knew about and approved all of his expenses. The allegedly "excessive" expenses were for team building activities and customer interactions that Mills' boss attended. They also were not excessive and covered expenses beyond just activities that Mills individually undertook for the business.

- Mills further explained that the interest charged on his expense report was appropriate because he had paid these expenses with his personal credit card and Defendant had not reimbursed him for those expenses for several months (which cost Mills a significant amount of money in finance charges from his credit card company). Once again, Mills emphasized that his boss had directed him to include these interest charges in his expense report.

- And Mills explained that Defendant required additional vehicles to service its customer base and he owned two vehicles that he did not use. Initially, Mills had leased two of his personal vehicles to Defendant (which his boss approved). Then, he sold the vehicles to Defendant using the Kelly Blue Book value of the vehicles as the purchase price and credited the lease payments against the purchase price. Yet again, Mills explained that he discussed the lease and purchase of these vehicles by Defendant with his boss who had approved.

- Finally, Mills explained that it was his boss' responsibility to provide financial reports to Defendant's minority owners.

24. Defendant also interviewed several other employees in relation to the allegations against Mills. These employees confirmed what Mills had already told Defendant: that Mills' boss had approved of the expenses at issue and also approved of the lease and ale of Mills' vehicles to Defendant. Employees also confirmed that Mills was available to Defendant regardless of where he physically worked. They also confirmed that Mills' boss—not Mills—had the responsibility to report financial information to Defendant's minority owners.

25. Despite all this, Defendant fired Mills for reasons brimming with pretext for discrimination.

26. For example, Defendant prepared a memorandum outlining its supposed basis for firing Mills. The date of the memo itself confirms its pretextual nature. The memo was dated

July 30, 2021, but it states that it was "amended from July 28, 2021." Defendant did not disclose the original July 28 memo to Mills when he requested his personnel file, which confirms that Defendant decided to terminate Mills' employment on July 28 before Defendant ever even spoke to Mills about the alleged unnamed employees' concerns.

27. The timing of the specious investigation further underscores the pretextual reason for the firing because each of the events occurred months or years earlier with Defendant's full knowledge and approval.

28. And, perhaps most damning, Defendant never spoke with or even contacted Mills' boss to discuss any of the supposed allegations regarding Mills, despite the fact that Mills' boss is the one individual (beyond Mills' himself) who could shed the most light on the situation. Again, if Defendant had done so, Mills boss would have confirmed that he authorized and approved each of the acts of alleged misconduct being investigated. He also would have confirmed that he did not view any of the actions taken by Mills to be improper in any way and that he and Mills spoke regularly about these types of activities and the state of the business.

29. Defendant promoted a much younger employee in his mid-30's to replace Mills. This employee had no leadership experience and he had no experience running a company before he had been selected to replace Mills. This employee, who started as a casino slot technician, also had a history of well-known performance problems and many glaring deficits in his skills and abilities resulted in his removal from a leadership role when he reported to Mills.

30. Mills filed a charge of discrimination with the United States Equal Employment Opportunity Commission and has otherwise satisfied all administrative prerequisites to filing his causes of action.

## COUNT 1

### DISCRIMINATION IN VIOLATION OF THE
### AGE DISCRIMINATION IN EMPLOYMENT ACT

31. Mills repeats all the previous allegations in his complaint.

32. Mills belongs to a class of persons protected by the Age Discrimination in Employment Act. He was over 40 years of age at the time of the adverse employment actions described in this count and in other paragraphs of the complaint.

33. Defendant terminated Mills' employment because of his age.

34. Defendant replaced Mills with a significantly younger employee.

35. But for Mills' age, Defendant would not have terminated Mills' employment.

36. Defendant willfully discriminated against Mills based on his age.

37. Mills suffered damages as a result of Defendant's discrimination that include, but are not limited to, back wages, front pay, liquidated damages, attorney's fees, and litigation costs.

## COUNT 2

### DISCRIMINATION IN VIOLATION OF
### MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT

38. Mills repeats all the previous allegations in his complaint.

39. Mills belongs to a class of persons protected by the Elliott-Larsen Civil Rights Act. He was over 40 years of age at the time of the adverse employment actions described in this count and in other paragraphs of the complaint.

40. Defendant terminated Mills' employment because of his age.

41. Defendant replaced Mills with a significantly younger employee.

42. Mills' age was one of the motives or reasons that made a difference in deciding to terminate his employment.

43. Mills suffered damages as a result of Defendant's discrimination that include, but are not limited to, back wages, front pay, attorney's fees, and litigation costs.

## COUNT 3
### BREACH OF CONTRACT

44. Mills repeats and incorporates all the previous allegations in his complaint.

45. Mills and Defendant entered into an employment agreement. (Ex. 1, Employment Agreement)

46. Defendant breached the parties' employment agreement by failing to pay Mills his base salary for 12 months as severance pay when it ended his employment without good cause.

47. Mills has suffered damages of at least $210,000.00 as a result of Defendant's breach of the parties' employment agreement.

## COUNT 4
### PROMISSORY ESTOPPEL AND QUANTUM MERUIT

48. Mills repeats and incorporates all the previous allegations in his complaint.

49. Defendant made a promise to Mills that was clear and definite in which it promised to pay him his base salary for 12 months as severance pay if it ended his employment without good cause.

50. When Defendant made that promise to Mills, Defendant knew or should reasonably have expected that this promise would induce Mills to rely on that to, among other things, perform work for Defendant and to forgo other employment opportunities.

51. Mills did in fact perform work for Defendant and he refrained from pursuing other employment and opportunities in reliance on Defendant's promise.

52. Mills has suffered damages as a result of his reliance on Defendant's promises and its failure to live up to its promises.

### JURY DEMAND

53. Mills demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

## RELIEF REQUESTED

54. Plaintiff Michael Mills requests that the Court enter a judgment in his favor and against Defendant CSM NEWCO LLC in an amount that will fully and fairly compensate him for all of his damages, losses, expenses, back wages, emotional distress, attorney's fees, litigation costs, and interest.

55. Mills also requests that the court grant him any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

                              MICHAEL MILLS

Dated:  September 22, 2022        By:   /s/  Mark S. Wilkinson

                            Mark S. Wilkinson (P68765)
                            PALADIN EMPLOYMENT LAW PLLC
                            *Attorney for Plaintiff*
                            5955 West Main Street
                            Kalamazoo, MI 49009
                            (tel.) 269.978.2474
                            mark@paladinemploymentlaw.com